IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. WILSON, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO.  3:05-2101 |
| | : (JUDGE KOSIK) |
| UNKNOWN BUDGEON, KEVIN KANE, JOHN KERESTES, J.D. SHUTT, PETE DAMITER, ROBERT SHANNON, AND ROBERT BITNER, | : |
| Defendants. | : |

**MEMORANDUM**

Before this court are the plaintiff's objections to the Report and Recommendation issued by United States Magistrate Judge J. Andrew Smyser.  In the September 20, 2006, Report and Recommendation (Doc. 76), Magistrate Judge Smyser suggested that we grant the defendants' second motion for summary judgment (Doc. 54), deny the plaintiff's second motion for summary judgment (Doc. 71), and dismiss the plaintiff's equal protection claim for failure to state a claim on which relief may be granted.  For the reasons that follow, we will adopt the Report and Recommendation of the Magistrate Judge, grant the defendants' motion for summary judgment, deny the plaintiff's motion for summary judgment, dismiss the plaintiff's equal protection claim, and close this case.

**I.  BACKGROUND**

John D. Wilson (hereinafter "Plaintiff"), an inmate at the State Correctional Institution at Frackville, Pennsylvania, filed this civil rights action on October 15, 2005,

pursuant to 42 U.S.C. §1983. (Doc. 1). The defendants were Timothy Budgeon, corrections officer at the State Correctional Institution at Frackville (SCI-Frackville); Kevin Kane, hearing examiner at SCI-Frackville; John Kerestes, deputy for centralized services at SCI-Frackville; J.D. Shutt, deputy for facilities management at SCI-Frackville; Robert Shannon, Superintendent at SCI-Frackville; Robert Bitner, Chief Hearing Examiner for the Pennsylvania Department of Corrections; Pete Damiter, Assistant to Superintendent/Grievance Coordinator at SCI-Frackville; M. Lamas; and, William Kepner. Plaintiff alleged that on January 5, 2004, defendant Budgeon issued Plaintiff a false and fabricated misconduct report in retaliation for Plaintiff's being "voicetrous" in a disagreement between the two men. (*See* Complaint, Doc. 1, ¶ 30). Plaintiff asserted First Amendment retaliation and Fourteenth Amendment equal protection and due process claims, as well as state law claims of negligence. Plaintiff's complaint named defendants, Lamas and Kepner, but alleged no improprieties on the part of those two defendants.

On January 11, 2006, the defendants filed a motion to dismiss or, in the alternative, for summary judgment. (Doc. 17). Defendants asserted that the complaint should be dismissed because Plaintiff failed to exhaust his appeals related to the misconduct report at issue, misconduct report No. A465945. All parties briefed the defendants' motion. (Docs. 18-21, 24-25, 27-28, 30). Plaintiff filed his own motion for summary judgment on March 24, 2006. (Doc. 32). Plaintiff's motion sought summary judgment on his due process claim only. Plaintiff did not move for summary judgment on his retaliation claim. All parties briefed Plaintiff's motion. (Docs. 33-34, 36). Plaintiff additionally filed a motion for a temporary restraining order on April 27,

2006. (Doc. 38).

On May 19, 2006, we granted the defendants' motion to dismiss or for summary judgment and denied as moot Plaintiff's motions for summary judgment and for a temporary restraining order. (Doc. 43). The defendants, however, filed a motion for reconsideration retracting the assertion that Plaintiff failed to appeal the misconduct at issue. (Doc. 45). The defendants' motion asserted that Plaintiff nonetheless failed to exhaust the retaliation claim, because the latter never raised the issue of retaliation during the misconduct hearing or the subsequent administrative appeals. By an order of June 1, 2006, we vacated in part our previous order. (Doc. 49). In the June 1, 2006, order, we let stand the dismissal of Plaintiff's state law negligence claims, as well as all claims against defendants Lamas and Kepner. We vacated the dismissal of Plaintiff's retaliation and due process claims against the remaining defendants. We additionally vacated the denial of Plaintiff's motions for summary judgment and for a temporary restraining order. Finally, we reopened the case and remanded it to Magistrate Judge Smyser for further proceedings.

On June 14, 2006, Magistrate Judge Smyser filed a Report and Recommendation suggesting that this court deny Plaintiff's motions for summary judgment and for a temporary restraining order. (Doc. 53). Plaintiff filed objections thereto on June 22, 2006. (Doc. 60). By Memorandum and Order of July 7, 2006, this court dismissed Plaintiff's objections, adopted the Magistrate Judge's Report and Recommendation, and denied Plaintiff's motions for summary judgment and for a temporary restraining order. (Doc. 64).

The remaining defendants, Budgeon, Kane, Kerestes, Shutt, Shannon, Bitner, and

Damiter, filed a second motion for summary judgment on June 15, 2006. (Doc. 54). Defendants again asserted that the complaint should be dismissed as Plaintiff failed to exhaust the administrative remedies available to him at SCI-Frackville. The defendants argued that throughout his appeal of the hearing examiner's decision, Plaintiff never alleged that the misconduct was issued in retaliation for his exercise of his First Amendment rights. They further asserted that Plaintiff neglected to file a grievance regarding the alleged retaliation. The defendants concluded that Plaintiff failed to exhaust administrative remedies regarding the retaliation claim as required by the Prison Litigation Reform Act (PLRA). The defendants also asserted that Plaintiff's claims for monetary damages are not recoverable in this 42 U.S.C. § 1983 action, that judgment should be entered in their favor with regard to Plaintiff's retaliation claim because Plaintiff did not engage in any constitutionally protected activity, and that Plaintiff's due process claim must fail because Plaintiff was not deprived of a protected liberty interest. (*See* Defendant's Brief, Doc. 57).

Plaintiff filed a brief in opposition to the defendants' motion on July 17, 2006. (Doc. 67). He filed his own, second motion for summary judgment on August 14, 2006. (Doc. 71). The defendants filed a response thereto on August 28, 2006 (Doc. 74). On September 20, 2006, Magistrate Judge Smyser filed a Report and Recommendation in which he suggested that this court grant the defendants' motion for summary judgment, deny Plaintiff's motion for summary judgment, and dismiss Plaintiff's equal protection claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted. (Doc. 76). The Magistrate Judge determined that Plaintiff had not exhausted his administrative remedies with regard

to his retaliation claim and that judgment should be entered in the defendants' favor on Plaintiff's due process claim because the sanction of sixty (60) days of disciplinary confinement did not implicate a liberty interest protected by the Fourteenth Amendment.

Plaintiff filed a response to the Report and Recommendation on September 28, 2006. (Doc. 78). We will treat Plaintiff's response as objections. Plaintiff's objections challenge only the Magistrate Judge's suggestions regarding Plaintiff's due process and retaliation claims. The defendants filed a brief countering plaintiff's objections on October 4, 2006. (Doc. 79).

## II. STANDARDS OF REVIEW

### A. Objections To Report And Recommendation

When objections are filed to a Report and Recommendation of a Magistrate Judge, we must make a *de novo* determination of those portions of the report to which objections are made. *See* 28 U.S.C. §636(b)(1); *see also Sample v. Diecks*, 885 F.2d 1099, 1106 n.3 (3d Cir. 1989). In doing so we may accept, reject or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. *See* 28 U.S.C. §636(b)(1); *see also* Local Rule 72.3. Although our review is *de novo*, we are permitted to rely upon the Magistrate Judge's proposed recommendations to the extent we, in the exercise of sound discretion, deem proper. *See United States v. Raddatz*, 447 U.S. 667, 676, 100 S.Ct. 2406, 2413 (1980).

### B. Summary Judgment Standard

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When ruling on a motion for summary judgment, the court must view the record in a light most favorable to the non-moving party. *See Skerski v. Time Warner Cable Co.*, 257 F.3d 273, 278 (3d Cir. 2001). Moreover, the court must draw all reasonable inferences in favor of the non-movant. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986).

The burden rests with the moving party to demonstrate that there is no genuine issue of material fact. Thereafter, the non-moving party must counter with evidence that supports each essential element of his or her claim. *See Skerski*, 257 F.3d at 278 (citing *Pittston Co. Ultramar Am. Ltd. v. Allainz Ins. Co.*, 124 F.3d 508, 515 (3d Cir. 1997)). The non-moving party must do "more than simply show that there is some metaphysical doubt as to the material facts," and where the record taken as a whole could not allow a rational fact-finder to find in favor of the non-moving party, summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

## III. DISCUSSION

### A.   Retaliation Claim

The defendants' motion argues that judgment should be entered in their favor on Plaintiff's retaliation claim due to the fact Plaintiff failed to exhaust the available administrative remedies and because Plaintiff was not engaged in any constitutionally protected activity. (*See* Brief in Support of 2nd Motion for Summary Judgment, Doc.

6

57). The Magistrate Judge agreed that Plaintiff failed to exhaust administrative remedies and recommended judgment in the defendants' favor on that basis. The Report and Recommendation does not address the defendants' claim that Plaintiff did not engage in constitutionally protected activity prior to the issuance of the misconduct. This court finds that Plaintiff's retaliation claim is without merit as he was not engaged in any constitutionally protected activity at the time the misconduct was issued. The issue of exhaustion, therefore, is moot. Nonetheless, we review both arguments below.

### 1.   Exhaustion of Administrative Remedies

The Magistrate Judge suggests that judgment should be entered in the defendants' favor on Plaintiff's retaliation claim due to the fact that Plaintiff failed to exhaust administrative remedies as required by the PLRA, 42 U.S.C. § 1997e(a). The Report and Recommendation acknowledges that Plaintiff exhausted his appeals for the misconduct at issue, but notes that Plaintiff never raised the issue of retaliation in the review process. The Magistrate Judge also suggests that Plaintiff did not exhaust all appeals of the grievance that he filed regarding the issue. Accordingly, the Magistrate Judge concludes that Plaintiff failed to exhaust his administrative remedies with regard to the claim of retaliation.

In his objections, Plaintiff counters that he did exhaust the available administrative remedies. Specifically, Plaintiff asserts that he exhausted his appeals of misconduct report No. A465945, by pursuing his appeal to the Chief Hearing Examiner. Plaintiff additionally contends that he filed a grievance pursuant to the prison grievance procedure set forth in DC-ADM 804, alleging retaliatory conduct on the part of

defendant Budgeon. Plaintiff argues that the grievance was rejected by the prison due to the fact that the claim related to an ongoing disciplinary matter. He concludes that his actions demonstrate that he exhausted all remedies available to him.

Plaintiff's assertions are validated by the defendants' exhibits filed in support of both of their motions for summary judgment. Plaintiff did appeal misconduct report No. A465945 to the Chief Hearing Examiner. (*See* Appendix to 2nd Motion for Summary Judgment, Doc. 54, Exhibit "C"). While none of Plaintiff's misconduct appeals raises the issue of retaliation, Plaintiff did file a grievance pursuant to DC-ADM 804, asserting a claim of retaliation. (*See* Appendix to 1st Motion for Summary Judgment, Doc. 19, Exhibits "C" and "D"). The Facility Grievance Coordinator refused to review the grievance due to the fact that it related to a disciplinary matter. *Id.*

This court is reticent to dismiss Plaintiff's retaliation claim on the basis of the exhaustion requirement of the PLRA. The prisoner misconduct policy is governed by the Pennsylvania Department of Corrections Administrative Directive 801 (DC-ADM 801). The prisoner grievance regime is set forth in Administrative Directive 804 (DC-ADM 804). The misconduct policy, DC-ADM 801, contains no reference to the adjudication of a prisoner's claim that a misconduct report was issued in retaliation for an inmate's engaging in constitutionally protected conduct. The language of DC-ADM 804 appears to cover allegations of retaliation against prison staff. The directive even provides for a definition of retaliation. (DC-ADM 804, § IV(N)). A section labeled "Exceptions," however, excludes from the purview of the grievance system any issues relating to, "DC-ADM 801, Inmate Discipline." (DC-ADM 804, § VI(F)). That exception precluded Plaintiff from pursuing a grievance against defendant Budgeon alleging

8

retaliation. (*See* Appendix to 1st Motion for Summary Judgment, Doc. 19, Exhibit "D"). In a graph of Plaintiff's grievances prepared by the defendants as an exhibit to their first motion for summary judgment, the defendants acknowledge that Plaintiff's grievance was not accepted by the grievance coordinator at SCI-Frackville. Defendants note that the grievance was, "returned because dealt with Inmate Discipline Procedures". (*See* Appendix to 1st Motion for Summary Judgment, Doc. 19, Exhibit "C").

This court sympathizes with the Plaintiff's confusion regrading the appropriate manner to present a claim of retaliation. Read alone, neither DC-ADM 801, nor DC-ADM 801 clearly instruct a prisoner how to present such a claim. Given the language of the two policies and the nature of Plaintiff's claim, we can appreciate Plaintiff's decision to pursue the retaliation claim via the prison's grievance procedure. It is equally understandable that Plaintiff would not appeal the grievance once his claim was procedurally rejected by the Grievance Coordinator. Plaintiff's sole error was his subsequent failure to raise the issue of retaliation in his appeal of the hearing examiner's decision on the misconduct report. The Report and Recommendation suggests that the error is fatal to Plaintiff's present claim for retaliation. It concludes that because Plaintiff neglected to raise the issue of retaliation in his misconduct appeal, Plaintiff failed to exhaust the available administrative remedies as required by the PLRA. We are not confident that such a holding is warranted under the circumstances presented. We decline to adopt the Magistrate Judge's recommendation with regard to the issue of exhaustion of remedies relating to the retaliation claim.

### 2. Retaliation Analysis

No decision on the defendants' claim that Plaintiff failed to exhaust administrative remedies is necessary in this case as Plaintiff cannot establish the requisite elements of a retaliation claim. A prisoner-plaintiff retaliation claim entails three elements: (1) that the plaintiff engaged in constitutionally protected conduct; (2) that an adverse action was taken against the plaintiff that would deter him from engaging in that conduct; and, (3) a causal connection between the plaintiff's conduct and the adverse action. "As a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected." *Rauser v. Horn,* 241 F.3d 330, 333 (3d Cir. 2001); *see also Jerry v. Williamson* 2006 WL 3741840, 1 (3d Cir. 2006). The plaintiff must then demonstrate, "that he suffered some adverse action at the hands of the defendants, and that there was a causal link between the constitutionally-protected activity and the adverse action." *Jerry,* 2006 WL 3741840 at 1.

In the prison setting, conduct that would otherwise be protected may be proscribed because of institutional needs. *See Wilson v. Schillinger*, 761 F.2d 921, 925 (3d Cir. 1985) (holding "prisoner's constitutional rights are subject to limitations and restrictions that would be intolerable if imposed against the general public"). The existence of constitutional protection for certain conduct is more problematic in the prison setting. The Sixth Circuit explained as follows:

> . . . it is generally much harder for a prisoner to show that his conduct is protected because prison regulations are allowed to infringe on prisoners' rights as long as they are rationally related to a legitimate penological concern. *See*

> *Turner v. Safley*, 482 U.S. 78, 96 L. Ed. 2d 64, 107 S. Ct. 2254 (1987). Therefore, if a prisoner violates a legitimate prison regulation, he is not engaged in "protected conduct," and cannot proceed beyond step one [of the retaliation analysis].

*Thaddeus-X v. Blatter*, 175 F.3d 378, 395 (6th Cir. 1999). While inmates "do not forfeit all constitutional protections by reason of their conviction and confinement including those under the First Amendment . . ., lawful incarceration brings about the withdrawal or limitation of privileges and rights for various reasons including institutional security." *Cooper v. Tard*, 855 F.2d 125, 128 (3d Cir. 1988 ). "Specifically, prisoners' exercise of First Amendment freedoms may be curtailed when, in the informed judgment of prison officials, such exercise poses 'the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment.'" *Wilson*, 761 F.2d at 925 (quoting *Jones v. North Carolina Prisoner's Labor Union*, 433 U.S. 119, 132 (1977)); *See also Canty v. Booker*, No. 97-3435-RDR, 2000 WL 134455, 3 (D. Kan. 2000) (holding "inmate's limited First Amendment rights do not include any purported right to disobey orders or incite a disturbance").

In this instance, the defendants' motion for summary judgment asserts that Plaintiff's retaliation claim must fail because Plaintiff was not engaged in any constitutionally protected activity that led to the issuance of the misconduct at issue. Specifically, the defendants note that Plaintiff argues that defendant Budgeon issued the misconduct in retaliation for an argument the two men had over a cell block television. The defendants conclude that Plaintiff's argument with defendant Budgeon

11

was not protected speech under the First Amendment. We agree.

Plaintiff's complaint states as follows:

> Plaintiff and defendant Budgeon got into a verbal altercation over the block t.v. This officer wanted to watch one thing while plaintiff wanted to watch something else. Plaintiff advised this defendant the t.v. was for the viewing of inmates, not prison guards. This defendant Budgeon stated that I know more about you then [sic] you know about me. Plaintiffs' [sic] response was that you only know what the block computer state's [sic].

(Complaint, Doc. 1 at ¶ 29). Plaintiff's response to the defendants' second motion for summary judgment contains similar language:

> It has been argued that plaintiff and defendant Budgeon engaged in a verbal altercation, in which plaintiff was issued a fabricated misconduct report, and plaintiff has averred that he has a protected liberty interest under the first [sic] Amendment to freedom of speech. . . .
>
> \* \* \*
>
> The first [sic] Amendment protects plaintiff from being retaliated against for exercising his freedom of speech right, so long as the freedom of speech does not become disrespectful.

(Plaintiff's Response, Doc. 67 at 1).

Plaintiff has failed to establish the first element of a retaliation claim. Both his complaint and response to the defendants' second motion for summary judgment demonstrate that Plaintiff was not engaged in constitutionally protected speech when the misconduct report was issued. Rather, Plaintiff asserts that he argued with defendant Budgeon over the use of a television. Arguing with a corrections officer over the selection of television stations is not protected speech. *See Wilson*, 761 F.2d at 925 (holding "prisoners' exercise of First Amendment freedoms may be curtailed

when, in the informed judgment of prison officials, such exercise poses 'the likelihood of disruption to prison order or stability, or otherwise interferes with the legitimate penological objectives of the prison environment'"). Plaintiff had no constitutionally protected right to disobey orders from the prison staffer. *See Canty*, 2000 WL 134455, 3 (holding "inmate's limited First Amendment rights do not include any purported right to disobey orders or incite a disturbance"). The fact that Plaintiff denies threatening defendant Budgeon is insignificant here. This court concerns itself only with the existence or nonexistence of the three elements of a retaliation claim. In this case, Plaintiff cannot establish the first element of a retaliation claim. We will grant judgment in the defendants' favor on the retaliation claim as they established that Plaintiff was not engaged in constitutionally protected speech prior to the issuance of the misconduct. *See Rauser*, 241 F.3d at 333 (holding, "[a]s a threshold matter, a prisoner-plaintiff in a retaliation case must prove that the conduct which led to the alleged retaliation was constitutionally protected"); *see also Skerski*, 257 F.3d at 278 (holding burden on the moving party to demonstrate that evidence creates no genuine issue of material fact).

**B.    Due Process Claim**

In his complaint, Plaintiff alleges that the prison's system for adjudicating misconduct reports violates the Due Process Clause. Specifically, Plaintiff contends that defendant Kane, hearing examiner at SCI-Frackville, maintains an alliance with prison guards and rarely finds in favor of inmates. (*See* Complaint, Doc. 1 at ¶¶ 18-25). The defendants' argue that judgment should be entered in their favor as Plaintiff

13

was not deprived of a protected liberty or property interest during disciplinary proceedings. (*See* Brief in Support of 2nd Motion for Summary Judgment, Doc. 57 at 12). Plaintiff offered little in terms of a cogent response. Rather, Plaintiff suggests that he was denied due process because there was, "no evidence to support the disciplinary action rendered." (Plaintiff's Response, Doc. 67 at 3). The Magistrate Judge agreed with the defendants and recommended that judgment be entered in their favor on Plaintiff's due process claim. Plaintiff's objections to the Report and Recommendation contain no additional arguments regarding the due process claim.

The Fourteenth Amendment of the United States Constitution provides, "[n]o State shall . . . deprive any person of life, liberty, or property without due process of law . . .." The Supreme Court provided a two-part analysis to be applied in procedural due process cases. First, the court must determine, "whether the asserted individual interests are encompassed within the . . . protection of 'life, liberty or property.'" *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Second, "if protected interests are implicated, [the court] then must decide what procedures constitute 'due process of law.'" *Id.* If there is no protected liberty or property interest implicated in a procedural due process claim, it is unnecessary to determine what procedures were constitutionally mandated.

In *Sandin,* the Supreme Court addressed the issue of whether the type of confinement to which a prisoner is subjected raises a "liberty" interest protected by the Due Process Clause. *Sandin* involved the procedural due process claims of a state prisoner who had been found guilty of misconduct and sentenced to thirty (30) days

14

in disciplinary segregation. The *Sandin* plaintiff asserted that the prison officials' refusal to permit his witnesses at the disciplinary hearing and the resulting punishment of thirty (30) days disciplinary confinement encroached upon a liberty interest protected by the Due Process Clause. *Sandin*, 515 U.S. at 484. The Supreme Court disagreed and held that no liberty interest was implicated. The Court determined that the plaintiff's "discipline in segregated confinement did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." *Id*. at 486. In a later case, the Third Circuit held that seven months disciplinary confinement does not, on its own, "violate a protected liberty interest as defined in *Sandin*." *Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002).

In this instance, Plaintiff has failed to establish the first prong of a procedural due process claim. Following the finding of guilt, the hearing examiner sanctioned Plaintiff to sixty (60) days in disciplinary confinement. Disciplinary confinement of such a duration, standing alone, does not implicate a liberty interest protected by the Fourteenth Amendment. *See Smith*, 293 F.3d at 654 (holding seven months disciplinary confinement did not violate protected liberty interest). Drawing all reasonable inferences in favor of Plaintiff, we find no genuine issue as to any material fact relating to Plaintiff's due process claim. Accordingly, we will enter judgment in favor of the defendants' on that claim. *See* Fed. R. Civ. P. 56(c).[1]

---

[1] Even if we were to concede the first prong of the due process analysis, that a liberty interest was implicated, we would hold that Plaintiff has not established the second, that the procedures employed by the Pennsylvania Department of Corrections in this instance do not constitute "due process of law." Plaintiff's motion relies entirely upon his own conclusory allegations of constitutional violations on the part of the

**C.    Equal Protection Claim**

The defendants' did not challenge Plaintiff's equal protection claim in their second motion for summary judgment. Nonetheless, Magistrate Judge Smyser recommends that this court dismiss Plaintiff's equal protection claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), for failure to state a claim on which relief may be granted. Plaintiff neglected to address the suggested dismissal of his equal protection claim in his objections to the Report and Recommendation. Accordingly, this court need not make a *de novo* determination regarding Plaintiff's equal protection claim. *See* 28 U.S.C. §636(b)(1). We will, nonetheless, briefly review the issue.

The Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1. The Third Circuit has recognized that in order to establish a viable equal protection violation, a plaintiff must show an intentional or purposeful discrimination. *See Wilson*, 761 F.2d at 929 (holding intentional or purposeful discrimination a necessary element of equal protection violation). The Equal Protection Clause is not a command that all persons be treated alike but, rather, "a direction that all persons similarly situated should be treated alike." *Artway v. Attorney General of State of N.J.*, 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)).

---

defendants and indictments against the Pennsylvania Department of Corrections' grievance and disciplinary procedures. Plaintiff's sole allegations against the hearing examiner include a predisposition to find against inmates and the assertion that Plaintiff's case was decided upon the testimony of the complaining officer. None of Plaintiff's allegations would survive summary judgment.

In this instance, the Magistrate Judge, liberally interpreting the complaint of a *pro se* plaintiff, concluded that various paragraphs of Plaintiff's complaint assert an equal protection claim. Notably, paragraph twenty-six (26) alleges that specific defendants "failed to provide plaintiff equal protection of the law(s)." (Complaint, Doc. 1 at ¶ 26). Plaintiff's lone accusation appears to be that the hearing examiners at SCI-Frackville maintained a bias against inmates and treated inmates differently from prison staff. (*See Id.* at ¶¶ 15, 16, and 18).

The Magistrate Judge concluded that any equal protection claim must be dismissed as Plaintiff made no allegations that he was treated differently than similarly situated prisoners. We agree with the Magistrate Judge. Plaintiff alleges only that inmates are treated differently than prison staff. Such an accusation will not support an inmate's equal protection claim. *See Wilson*, 761 F.2d at 929 (holding intentional or purposeful discrimination a necessary element of equal protection violation); *see also Artway*, 81 F.3d at 1267 (holding Equal Protection Clause a direction that all persons similarly situated should be treated alike). We will dismiss Plaintiff's equal protection claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), as he has failed to state a claim on which relief may be granted.

### III. CONCLUSION

We concur with the determination of the Magistrate Judge that Plaintiff's equal protection claim should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), and that judgment should be entered in favor of the defendants on Plaintiff's due process claim. We decline to adopt the Magistrate Judge's conclusion that Plaintiff failed to

exhaust the available administrative remedies with regard to his retaliation claim. Nonetheless, this court will enter judgment in favor of the defendants on Plaintiff's retaliation claim as the latter was not engaged in constitutionally protected activity prior to receiving the misconduct report at issue.  We will adopt in part the Report and Recommendation of the Magistrate Judge, grant the defendants' second motion for summary judgment, deny Plaintiff's second motion for summary judgment as moot, dismiss Plaintiff's equal protection claim, and close this case.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN D. WILSON, | : |
| Plaintiff, | : |
| vs. | : CIVIL ACTION NO.  3:05-2101 |
| | : (JUDGE KOSIK) |
| UNKNOWN BUDGEON, KEVIN KANE, JOHN KERESTES, J.D. SHUTT, PETE DAMITER, ROBERT SHANNON, AND ROBERT BITNER, | : |
| Defendants. | : |

## **ORDER**

AND NOW, this 13th day of February, 2007, IT IS HEREBY ORDERED THAT:

[1] the plaintiff's objections (Doc. 78) to the Report and Recommendation, are dismissed;

[2] the Magistrate Judge's September 20, 2006, Report and Recommendation (Doc. 76) is adopted in part;

[3] the defendants' second motion for summary judgment (Doc. 54) is granted;

[4] the plaintiff's second motion for summary judgment (Doc. 71) is denied as moot;

[5] the plaintiff's equal protection claim is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii);

[6] judgment is entered in favor of all remaining defendants and against the plaintiff; and,

[7] the Clerk of Court is directed to close this case and forward a copy of this Memorandum and Order to United States Magistrate Judge J. Andrew Smyser.

s/Edwin M. Kosik
United States District Judge